UNITED STATES DISTRICT
COURT DISTRICT OF
MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Criminal No. 1:19-CR-10459 |
| ) | |
| DANTE LARA ) | |

### DEFENDANT DANTE LARA'S MOTION FOR RELEASE FROM DETENTION

The defendant Dante Lara, by his attorney, respectfully requests that the court release him on pursuant to the Bail Reform Act and upon such conditions that the court deems reasonable and appropriate. 18 U.S.C. § 3142; *United States v. Jessup,* 757 F.2d 378 (1st Cir. 1985); *United States v. Ploof*, 851 F.2d 7 (1st Cir. 1988).  Mr. Lara was indicted on one count of Racketeering pursuant to 18 U.S.C. § 1962(d) on December 4, 2019 and arraigned the following day.  Mr. Lara has not had a detention hearing. He previously stipulated to voluntary detention without prejudice and the order was entered on December 24, 2019.  He has been held since December 5, 2019.

The government objects to this motion and has moves for continued detention pursuant to 3142(f)(1)(e), §3142(f)(2)(A) and §3142(f)(2)(B). Pretrial services recommends Mr. Lara's release.

I. Mr. Lara's Personal Background, Education, and Employment

*A. Mr. Lara's Personal Background*

Mr. Lara proposes to be released to 77 Indiana St. in Providence, where he was living prior to his arrest in December 2019. His lease and a letter from his landlord, Ana Mercado, is attached. This is the address he has lived at most recently and it is outside Massachusetts and away from any of the addresses or individuals associated with this case.  At 77 Indiana St., Mr. Lara lives

with his partner of three years, Gennesse Santiago and their two children: Bella (3) and Gennesse's son, Elijah (5). A photograph of Mr. Lara with Bella is attached. Gennesse is due to give birth to their son on April 16, 2020. A letter from Gennesse and her most recent ultrasound are attached.

Mr. Lara has worked at Aliyah's Painting for over a year, approximately six days per week. A photograph of Mr. Lara on the job is attached. Mr. Lara still has a job at Aliyah's Painting, where the owner, Xavier Pineda, needs Mr. Lara's help. A letter from Xavier Pineda is attached.

Gennesse has struggled to pay rent in Dante's absence and fears that without Mr. Lara's return as the household's provider that she may lose her home while she has a newborn and two, young children. She has missed a number of prenatal appointments without Mr. Lara's help. In her letter, Gennesse describes Mr. Lara as a "very responsible" and "wonderful" father, and requests that the Court allow him to return to their home to take care of his family.

Every day, after work, Mr. Lara visits with his two, other children who he co-parents with a former partner of ten years, Yanetzi Santiago. Mr. Lara also gives Yanetzi at least one hundred dollars per week to provide for his children. A letter from Yanetzi Santiago is attached.

His son with Yanetzi, Jael (8), is autistic and also suffers from Hirschsprung's Disease. As a result of the disease, Jael has had many doctor's appointments and had undergone a number of minor surgeries. However, about one year ago, the minor surgeries became insufficient and at age seven, Jael was placed under general anesthesia to sew the end of his colon to his abdominal wall in order for a drainage bag to be surgically implanted. Mr. Lara was at the hospital with his son that day, as he was for almost any medical procedure for Jael. Every day, Mr. Lara sits with Jael as he drains his son's bag for one hour.

His three year old daughter, Mia, has been in early intervention for the past year and a half for speech therapy. Mr. Lara attends Mia's early intervention sessions as well. In her letter, Yanetzi writes that Mr. Lara "helps financially for his children on a weekly basis and is there for emotional support as well. He is a key factor in both of his children's life and spends as much time has he can with both of them. Dante has been a great dad…fun, loving, and caring and wants the best for his kids."

Prior to his current life as an employed and devoted father of four, Mr. Lara grew up in the Boston area. His own father died when he was only an infant. He maintains a close relationship with his mother, but she has since moved to Florida. He went to school until the ninth grade and began GED courses. He has a strong history of maintaining gainful employment. Before Aliyah's, Mr. Lara worked at Santiago and Sons Construction for three years. Prior to that, he worked at Fenway Park as a concessions cashier.

B. *Mr. Lara's Existing Health Issues and the COVID -19 Pandemic*

Mr. Lara suffers primarily from two, different health issues relevant to his release. First, Mr. Lara suffers from acute diverticulitis. He was diagnosed for the first time shortly before his incarceration in this case, admitted to the hospital for two days, and told he would have to be scheduled for surgery. Undersigned counsel does not yet have medical records from Rhode Island Hospital, but the Plymouth County House of Corrections and US Marshal's Office are aware of his diagnosis and have exchanged emails with respect to this health issue. The US Marshal's office has indicated that Mr. Dante has an outside appointment with a gastroenterologist in April. The email is attached. However, Mr. Lara has been in a tremendous amount of pain and upon release, would intend to schedule and undergo surgery. Gennesse explains that the has seen Mr. Lara on the floor crying in pain. She adds that his "medical issue

3

is really important to me because I want him to be healthy and well for his children."

Significantly, Mr. Lara also suffers from asthma. He has been provided an inhaler at the jail. This may have been sufficient a couple months ago, but times have changed. The COVID-19 pandemic has changed the global landscape and placed Mr. Lara in significantly increased danger. At this point, it is widely known that this pandemic is overflowing hospitals, threatening the lives of millions. As of March 30, 2020, there are 735, 560 confirmed cases worldwide and 34, 830 deaths.[1] As of March 29, 2020, there are 4955 confirmed cases in Massachusetts with 48 deaths to date. [2]

In an attempt to contain the pandemic, the Centers for Disease Control and Prevention (CDC) has issued guidance discouraging gatherings of more than ten people in one place as well as social distancing, meaning each person should remain at a distance of six feet from every other person.[3] Unfortunately, the recommended measures for mitigating the spread of COVID-19 are not readily available for incarcerated inmates or those who must interact with them.

Because Mr. Lara has asthma, his risk of severe complications or death if he becomes infected with COVID-19 increases. *See*, *Affidavit of Danielle C. Ompad, PhD*, Doc. 628-2, p. 5, ¶ 7(b), attached to Defendant Roberto Vargas's Emergency Motion for Immediate Release from Confinement due to Risk of Contracting Covid-19 (doc 628). Mr. Lara is detained at Plymouth

---

[1] Center for Systems Science and Engineering at Johns Hopkins University, Coronavirus COVID-19 Global Cases Dashboard (Mar. 30, 2020, 7:57 a.m. EST), at https://gisanddata.maps.arcgis.com/apps/opsdashboard/index.html#/bda7594740fd40299423467b48e9ecf6.

[2] https://www.mass.gov/doc/covid-19-cases-in-massachusetts-as-of-march-28-2020/download

[3] *See* "How It Spreads," Center for Disease Control and Prevention (last accessed 03/30/2020), https://www.cdc.gov/coronavirus/2019-ncov/prepare/transmission.html.

County House of Corrections, where one employee and one inmate have tested positive for COVID-19. *See Supplemental Memorandum in support of Defendant Robert Lara's Motion to Revoke Detention and for Release on Conditions (doc. 635 p. 1)*. Mr. Lara is housed with a cellmate. His continued detention at the Plymouth County House of Corrections places him at a unique and potentially deadly risk given his asthma and removal from the concerning inability of jails to comply with the directives of the CDC, doctors, and politicians nationally supports his need for prompt release.

II.   Criminal Record

Mr. Lara's record's only defaults date back seven years for operating after suspended license cases and a license plate obstruction case from 2013. The most recent entry on his record consists of a six month continuance without a finding for possession with intent to distribute marijuana three years ago, for which he completed probation successfully and the case was dismissed. His only convictions on his record consist of one case charging him with an assault and battery with a dangerous weapon and assault and battery, for which he spent one year incarcerated in 2015 and completed two years of probation. His record indicates that with perhaps the limited exception of minor and subsequently dismissed motor vehicle violations seven years ago, Mr. Lara answers to his cases and there is nothing to indicate he would not appear on this case.

III.   Mr. Lara Must Be Released Because Conditions Will Reasonably Assure His Appearance in Court and the Safety of the Community

Mr. Lara should be released because there are conditions that will reasonably assure the safety of the community and Mr. Lara's appearance in court. A defendant can be detained "[o]nly 'if, after a hearing pursuant to [§ 3142(f)], the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and

the safety of any other person and the community.'" *United States v. Ploof,* 851 F.2d 7, 9 (1st Cir. 1988) (quoting 18 U.S.C. § 3142(e)). As the Supreme Court held in *United States v. Salerno*, 481 U.S. 739 (1987), "[i]n our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception." *Id.* at 755. This presumption of release is encapsulated in the BRA, 18 U.S.C. § 3142. The statute states that the Court "shall order" pretrial release, § 3142(b), except in certain narrow circumstances. Even if the Court determines under § 3142(c) that an unsecured bond is not sufficient, the Court "shall order" release subject to "the least restrictive further conditions" that will "*reasonably assure*" the defendant's appearance in court and the safety of the community. § 3142(c)(1) (emphasis added). Under this statutory scheme, "it is only a 'limited group of offenders' who should be detained pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987).

IV. <u>Conclusion</u>

Mr. Lara requests a hearing. For all of the reasons above and those to be argued following the hearing, Mr. Lara respectfully requests that this Court release him and proposes the following conditions:

1. That he reside at 77 Indiana Street in Providence, Rhode Island;
2. That he maintain his employment, or if he should become unemployed, seek employment and advance approval of the employment by pretrial services;
3. An unsecured bond of $10,000;
4. That he abide by all statutory conditions of release as well as any other conditions of release set forth in 18 U.S.C. §3142(c)(1) which the Court shall deem necessary.

Respectfully submitted,
DANTE LARA
By his attorney

|  |  |
|---|---|
| Dated: March 31, 2020 | /s/ Claudia Lagos<br>Claudia Lagos<br>B.B.O. #681504<br>Scully & Lagos<br>101 Summer St.<br>Boston, MA  02110<br>Tel: 617-307-5055 |

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 31, 2020.

*/s/ Claudia Lagos*
Claudia Lagos