UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| V. | ) ) | CR. NO. 1:19-cr-10459-RWZ |
| DANTE LARA | ) ) ) | |

**DEFENDANT DANTE LARA'S SENTENCING MEMORANDUM**

One week ago, Mr. Lara celebrated his thirtieth birthday at home with his family. He knows that this time next year he will be in federal prison. But, the Mr. Lara before the court today is not "King Nasty" from the Latin Kings or this indictment. He is a man, a partner, an "Papi" to his five children. Mr. Lara carries the weight of again leaving his children to live behind bars, but he will not allow incarceration to derail his forward progress.

Mr. Lara submits this memorandum in support of his request for a sentence of 18 months of incarceration and 36 months of supervised release. This imprisonment term is "sufficient, but not greater than necessary, to comply with" the purposes of federal sentencing. 18 U.S.C. §3553(a). Specifically, this sentence suffices to punish Mr. Lara for his role in the offense without significantly hindering the progress he has already made toward rehabilitation.

By way of background, Mr. Lara pled guilty to RICO conspiracy, 18 U.S.C. §1962(d) on November 5, 2020 (ECF 1445). In this case, there is a plea agreement pursuant to Rule 11(c)(1)(B), wherein Mr. Lara agreed to recommend no less than 18 months. The government recommends a sentence of 36 months (ECF 1674).

1

I.  The Proposed Sentence of 18 Months Incarceration and 36 Months Supervised Release Is Appropriate Under 18 U.S.C. §3553(a)

Pursuant to 18 U.S.C. §3553(a)(1) and (2), this court, in determining what sentence to impose, shall consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;
(2) The need for the sentence imposed—
   (A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct;
   (C) to protect the public from further crimes of the defendant; and
   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

While the Court may address any and all factors in §3553(a), the following warrant specific consideration:

   A. *The History and Characteristics of Dante Lara Support His Sentencing Recommendation*

On a typical weekday, around 4:30 P.M., Mr. Lara returns to his family home after hours of painting houses in the Providence, Rhode Island area. Xavier Pineda, Mr. Lara's employer for the past three years, values Mr. Lara as an employee and rehired Mr. Lara following his initial detention in this case. PSR ¶ 150. Mr. Pineda expects to continue employing Mr. Lara following Mr. Lara's sentence of incarceration. In a letter in support of Mr. Lara, Mr. Pineda describes Mr. Lara, including that:

- Mr. Lara has "good morals," "respectful," and "responsible;" and

- Mr. Lara is a hard, reliable worker. *Exhibit 1 (Pineda Letter).*

At home. Mr. Lara lives with his partner, Genesse Santiago, with whom he has been in a loving and committed relationship for approximately four years. Together, Genesse and Mr. Lara have a nearly two year old girl and a nearly one year old boy, both celebrating their

2

birthdays in April. Genesse also has a son, aged five, from a prior relationship, who considers Mr. Lara to be his father. Genesse also wrote a letter in support of Mr. Lara stating that:

- Traditionally, Mr. Lara has been the "breadwinner" for the family, working eight hours per day, five days per week
- Mr. Lara is a wonderful, loving, caring father and a great partner.
- Genesse faces substantial stress knowing that when Mr. Lara is incarcerated once again, she will be raising their three children alone until he returns. *Genesse Letter (to be filed under seal).*

Mr. Lara also has two children from a previous relationship with Yanetzi Santiago - an eight year old boy and a four year old girl. Sadly, their seven year old son suffers from Hirschsprung's Disease, a congenital disease impacting the young child's large intestine and his ability to pass stool. Doctors have also diagnosed him with Autism. As a result, this child requires daily, specialized care. Thankfully, Mr. Lara is more than up for the task of supporting his son any way he can. For example, when Mr. Lara is with his son, Mr. Lara administers his son's medicine through a colostomy bag via a syringe. After about thirty minutes, Mr. Lara flushes his son's colostomy bag for the next forty-five minutes. For Mr. Lara's son, this process is a necessary nightly ritual. Mr. Lara's son lives in a cycle of recovering for surgery, only to gather strength for the next procedure. Mr. Lara is intimately familiar with his son's particularized health care needs and they enjoy a close relationship.

Yanetzi likewise wrote a letter on Mr. Lara's behalf, stating that :

- Mr. Lara has always been in his children's lives.
- Mr. Lara has helped his son through his many medical challenges;
- Mr. Lara speaks to his children every day; and

- Mr. Lara's children "love him dearly." *Yanetzi Letter (to be filed under seal).*

While Mr. Lara could have never imagined that he would be awaiting trial in home confinement with his partner and three children during a global pandemic, he has used the time to bond with his children, reflect, and continue planning for his growth.  For instance, Mr. Lara hopes to open his own paint company following incarceration PSR ¶ 154. Mr. Lara is committed to setting a positive example for his children and be the father to them that Mr. Lara, unfortunately, never had.

Mr. Lara's father, Juan, was murdered when Mr. Lara was only three months old. Mr. Lara's mother, Romanita, had four other sons, Mr. Lara's half-brothers, at the time of Juan's death.  In Boston, Ramonita and her children suffered homelessness and endured stretches in homeless shelters.  Mr. Lara describes becoming a member of the Latin Kings when he was barely even a teenager. PSR ¶ 145. It was "all [he] knew." PSR ¶ 145. Two of his older brothers are co-defendants in the instant case.

Nonetheless, Mr. Lara  has always held a job, including as a valet, construction, and currently, when work is available, as a residential painter.  While Mr. Lara recognizes that there is still work to be done, Mr. Lara enters his thirties as a hardworking and devoted father, not the criminal of his twenties.

B. *The Recommended Sentence Provides Adequate Punishment and Deterrence for Mr. Lara*

The recommended sentence of 18 months of incarceration and 36 months of supervised release is sufficient to accomplish the purposes of 18 U.S.C. §3553(a)(2) because while Mr. Lara recognizes the need for further punishment, he has taken significant steps toward deterrence and rehabilitation warranting the requested sentence.

At the time police arrested Mr. Lara on this case in late 2019, Mr. Lara had already made significant, albeit incomplete, progress toward rehabilitation. Mr. Lara had largely distanced himself from the Latin Kings, both in his involvement and geographically. Mr. Lara had relocated to Rhode Island, where he had been living for three years prior to this case.

Mr. Lara's move to Rhode Island was, in part, precipitated by an approximately 317 incarceration in Suffolk County for the March 2015 incident described in the government's sentencing memorandum (ECF 1674). The case was ultimately nolle prossed by the Suffolk County District Attorney's Office. At the time Mr. Lara was incarcerated, he was already a father to his oldest son with chronic health issues. Mr. Lara made the decision to leave the Boston area, where the majority of the behavior landing him in the criminal justice system took place.

For the first few months of this case, Mr. Lara lived at the Plymouth County House of Corrections, away from his family once again and missing the birth of his youngest son last April (2020). When the court released Mr. Lara on this case, Mr. Lara did not squander his opportunity to show his commitment to complying with the law and the court's orders. For the past nearly 300 days Mr. Lara has been on strict conditions of release with which he has complied without a hiccup (PSR 4). These conditions included home confinement except for pre-approved employment, reporting to his probation officer, refraining from possession of guns or drugs, and submitting to random testing.

Nonetheless, Mr. Lara knows and understands that the punishment for his crimes will continue. He regrets disappointing his family again and not disassociating himself entirely from the Latin Kings. Therefore, the sentence of 18 months incarceration serves to punish Mr. Lara for his role in the conspiracy. However, this sentence also takes into account the eleven months

served for the nolle prossed Suffolk case now forming part of the basis for the government's request of 36 months of incarceration. Additionally, the requested sentence in conjunction with 36 months of supervised release considers the steps already taken by Mr. Lara in the interest of deterrence and rehabilitation, such as relocating to Rhode Island, supporting his family, complying with all court ordered conditions, and not engaging in any further criminal behavior.

II.     Applicable Sentencing Guidelines and Recommendation of 18 Months of Incarceration

Following *United States v. Booker*, 543 U. S. 220 (2005), the sentencing guidelines are "merely advisory, which means that the district court has considerable leeway to impose a sentence that falls outside the range suggested." *See United States v. Robinson*, 433 F. 3d 31, 35 (1st Cir. 2005). The guidelines "are still generalizations that can point to outcomes that may appear unreasonable to sentencing judges," and *Booker* allows courts "to impose non-guideline sentences that override guidelines, subject only to the ultimate requirement of reasonableness." *See United States v. Jimenez-Beltre*, 400 Mass. F. 3d 514, 518 (1st Cir. 2006).

In the plea agreement, Mr. Lara and the government agree on a total offense level of "16" (ECF 1427). Probation calculated Mr. Lara's criminal history category as IV (eight points) with an advisory sentencing range of 33-41 months. While Probation's calculation of criminal history points is not inaccurate, a criminal history category of IV substantially over-represents the seriousness of [his] criminal history or the likelihood that [he] will commit other crimes." U.S.S.G. §4A1.3(b)(1); *see, e.g., United States v. Levoner*, 31 F. Supp. 2d 23, 33 (D. Mass. 1998).

First, at least five out of Mr. Lara's eight criminal history points stem from acts committed by Mr. Lara between the ages of 20 and 23. *See U.S. v. Shoupe*, 988 F. 2d 440, 447 (3d Cir. 1993) ("The factors urged by [the defendant] at his sentencing in support of a §4A1.3 departure –

his age and immaturity at the time of his prior criminal offenses" are pertinent to whether defendant's criminal history category overrepresents its seriousness). The age range of the majority of Mr. Lara's criminal record reflects the judgment of an "emerging adult." This refers to the transitional period between approximately ages eighteen and twenty-five.[1] Significant neuroscience research has revealed that the human brain continues to develop well into the twenties."[2] In fact, the period of brain growth and maturation occurring between ages ten and twenty-four is the second most dynamic period of development, behind only infancy.[3] The continued development is linked to features like decision-making, risk assessment, and emotional regulation.[4] As a result, the Mr. Lara before the court is, developmentally speaking, quite a different person than the emerging adult who acquired the majority of the criminal history category points the court is asked to consider.

Second, three of Mr. Lara's criminal history points arise from "continuance without a finding" (CWOF) dispositions. Of course, these dispositions are properly counted in computing Mr. Lara's criminal history category. However, on his Massachusetts records, three of the cases adding to his points total ended in state dismissals. The relative minor nature of these offenses as demonstrated, in part, by the state courts' willingness to not convict Mr. Lara further supports that a criminal history category of IV overstates the seriousness of Mr. Lara's record.

---

[1] ARTICLE: THE LAW OF EMERGING ADULTS, 97 Wash. U. L. Rev. 1131, 1135 (2020).

[2] *Id*. at 1138.

[3] NOTE: EMERGING ADULTHOOD AND THE CRIMINAL JUSTICE SYSTEM: #BRAINNOTFULLYCOOKED #CAN'TADULTYET #YOLO, 58 Santa Clara L. Rev. 325 (2018).

[4] EMERGING ADULTS, 97 Wash. U. L. Rev. at 1140.

In the introduction to the 2018 Federal Sentencing Guidelines Manual, the text notes that "[c]omplex combinations of offense and offender characteristics" can "interact in unforeseen ways in unforeseen situations, this failing to cure the unfairness of a simple broad category system." This is precisely the case here. Given Mr. Lara's relative youth and developmental immaturity during the most active portion of his criminal record as well the dismissal of three of the cases following CWOF dispositions on his Massachusetts record, Mr. Lara suggests that criminal history category III is more appropriate, rendering Mr. Lara's guideline range to 27-33 months.

As a result, if the court were to consider that a criminal history category of III is more appropriate for Mr. Lara, putting him at a guideline range of 27-33 months, and take into account his incarceration for the March 2015 incident through the nolle prossed Suffolk Superior case (11 months), a sentence of eighteen months is appropriate.

III.     Request for Self-Surrender No Earlier Than May 2021

Mr. Lara further requests that this court allow Mr. Lara to report to the Bureau of Prisons no sooner than May 2021. In support, Mr. Lara states that as previously described to the court in his Motion for Release from Custody, Mr. Lara suffers from a respiratory condition that significantly increase his risk of serious illness from COVID-19 (ECF 658). In addition, Mr. Lara lives with acute diverticulitis and has a medical appointment on March 24, 2021. Finally, four out of five of Mr. Lara's children have birthdays in April and March, and Mr. Lara requests the opportunity to spend these celebrations with them before he says goodbye for the final time. After this term of incarceration, Mr. Lara plans to return home to his family and live his life free from any further interaction with the criminal justice system.

IV.     Conclusion

For the above reasons, Mr. Lara requests that the Court impose a sentence 18 months incarceration with 36 months of supervised release.

Respectfully Submitted,
Counsel for the defendant,

*/s/ Claudia Lagos*
Claudia Lagos
Scully & Lagos
101 Summer Street
Fourth Floor
Boston, MA  02110
(617) 307-5056

Dated: February 9, 2021

## Certificate of Service

I hereby certify that a copy of this Motion was served via ECF to all registered participants identified in the Notice of Electronic Filing (NEF) and paper copies will be served upon any party or counsel of record who is not a registered participant of the Court's ECF System. /s/ *Claudia Lagos*, February 9, 2021